Dear Mr. Stolier:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the St. Charles Parish Hospital Service District No. 1 d/b/a St. Charles Parish Hospital ("Hospital"), you have asked for our opinion on matters related to the proposed development of an assisted living facility by a private developer in cooperative endeavor with the Hospital.
According to your request, the Hospital has been charged with the responsibility to establish a first-class assisted living facility ("Facility") to benefit the citizens of St. Charles Parish. In furtherance of this responsibility, the Hospital purchased land located in Ashton Plantation in Luling, Louisiana on which it intended to construct and operate the Facility. Despite extensive efforts to obtain financing to develop an assisted living project, you indicate that the Hospital was unable to obtain financing. As a result, the Hospital sought participation by a third-party developer to construct and operate the Facility. The Hospital desires to work with the private developer and utilize the Ashton Plantation site in order to obtain the benefits of the Facility for the citizens of St. Charles Parish.
According to your request, the exact nature and structure of the Hospital's relationship with the developer remains to be determined. However, the proposed arrangement contemplates that the developer will contribute funds for startup and operations and will also finance the construction of the Facility through a loan. The Hospital will contribute the Ashton plantation site, with said contribution becoming final when the developer closes on the construction loan.
It is also anticipated that the Hospital and the developer will form a limited liability company that will own the Facility, and that the Hospital will own a 9.9% interest in that entity. You indicate that the Hospital will have veto power over certain decisions, but it will not vote or participate in the day to day operational decisions. The Hospital will also have representation on an advisory board that will work with the developer. *Page 2 
Specifically, you ask for our opinion on the following question:
 May the Hospital enter into a cooperative endeavor with a private developer to develop and operate an assisted living facility that includes Alzheimer's care, in which (a) the Hospital will contribute land owned by the Hospital, and will own 9.9% of the limited liability company that owns the facility, and (b) the private developer will secure financing (which the Hospital has been unable to obtain), and will contribute operating capital and its proven experience and know-how to the development and operation of the assisted living facility?
As authority for entering into a cooperative endeavor agreement with a private developer, your opinion request makes reference to La.Rev.Stat. 46:1077, which provides the following:
 § 1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the Constitution of Louisiana. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contract shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the Constitution of Louisiana.
Thus, pursuant to the specific language of La.Rev.Stat. 46:1077, the Hospital has the express authority to engage in a joint venture with any person or private persons to provide hospital health services. Such joint venture is presumed to be a cooperative endeavor as provided by Article VII, Section 14(C) of the Louisiana Constitution and it is further presumed that the Hospital entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contract shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the Louisiana Constitution.
Although the language found in La.Rev.Stat. 46:1077 appears to "pre-approve" the expenditure of public funds, since the proposed transaction contemplates the transfer of *Page 3 
public funds/property, we believe an analysis under Article VII, Section 14 of the Louisiana Constitution and the relevant jurisprudence is warranted. Article VII, Section 14 provides, in pertinent part, as follows:
 "Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . ."
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case), the Louisiana Supreme Court abandoned its analysis in City of Port Allen and articulated a new standard of review governing La.Const. art. VII, § 14(A), stating that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated."Cabela's, 938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority[1] to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity is in charge of undertaking; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the public funds it expends. The Cabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
As indicated above, La.Rev.Stat. 46:1077 specifically authorizes the Hospital to enter into joint ventures to provide hospital services. Thus, it is clear that the Hospital has the legal authority to enter into the proposed cooperative endeavor agreement. Further, we believe the expenditure of public funds, in this case the transfer of the Ashton Plantation site, in connection with the proposed cooperative endeavor agreement qualifies as a public purpose which comports with the governmental purpose for which the Hospital is charged with undertaking. *Page 4 
La.Rev.Stat. 46:1052 provides the following with respect to the objects and purposes of hospital service districts:
 § 1052. Objects of the districts
 The objects and purposes of the hospital service districts and the governing bodies created under the provisions of this chapter shall be:
 (1) To own and operate hospitals for the care of persons suffering from illnesses or disabilities which require that patients receive hospital care.
 (2) To administer other activities related to rendering care to the sick and injured or in the promotion of health which may be justified by the facilities, personnel, funds and other requirements available.
 (3) To promote and conduct scientific research and training related to the care of the sick and injured insofar as such research and training can be conducted in connection with the hospital.
 (4) To participate so far as circumstances may warrant in any activity designed and conducted to promote the general health of the community.
 (5) To cooperate with other public and private institutions and agencies engaged in providing hospital and other health services to residents of the district.
We believe the expenditure of public funds in connection with the project, as described, comports with the scope of the Hospital's statutory mission, objects, and purposes for the following reasons. Once completed, it is anticipated that the Facility would insure that: (1) citizens of the Parish receive preference on admission, ahead of out-of-parish citizens; (2) health needs of Facility residents will be attended to as needed in the Facility; and (3) some type of financial assistance will be provided for those parish citizens who initially qualify for residency in the Facility but then become unable to pay.
We also believe that the proposed transaction, as a whole, does not appear to be merely gratuitous. Although you indicate that it is possible that the value of the Ashton Plantation site will substantially exceed the developer's initial cash outlay, you point out that in addition to initial start up costs, the developer is contributing substantial experience, creditworthiness, know-how, and a proven track record. Further, the developer is expected to borrow ninety-percent (90%) of the construction costs. In our view, it is clear that the proposed cooperative endeavor agreement places reciprocal obligations on the parties. As such, we believe that the proposed transaction does not appear to be merely gratuitous, if the developer's obligations are reflected reasonably clearly in the agreement and related documents. *Page 5 
For these same reasons, we believe the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the public funds it expends. Again, according to your request, the developer will contribute experience, know-how, creditworthiness and a proven track record. Further, the developer will be required to provide financing. Additionally, your request indicates that the developer's confidential financial information provided to the Hospital shows that the developer has successfully developed and/or operated numerous other assisted living facilities. Based on these assurances, you believe that the Hospital has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the public funds it expends. We are inclined to agree with you.
Accordingly, we are of the opinion that the Hospital may enter into a cooperative endeavor agreement with a private developer to develop and operate an assisted living facility. The Hospital is also authorized to enter into the formation of a limited liability company in furtherance of the cooperative endeavor agreement and which will result in the Hospital owning 9.9% of the limited liability company in conjunction with a private developer.See Attorney General Opinion No. 97-209. We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: _________________ MICHAEL J. VALLAN Assistant Attorney General
 JDC/MJV/crt
[1] Port Allen stated that § 14(A) is violated "whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so."Cabela's, 938 So.2d at 20 (emphasis added). Although the "legal obligation" standard has been abandoned by Cabela's, we believe that a public entity still must have the legal authority to make the expenditure. For example, if a political subdivision does not have statutory authority to purchase or lease land, we do not believe Cabela's gives the political subdivision that authority just because the purchase may be for a public purpose, be non-gratuitous, and because the political subdivision would receive something in return for the money it spent.